EDWARD BURLESON et al. v. STATE.

No. A-4473.   Opinion Filed Sept. 13, 1924.

(228 Pac. 609.)

(Syllabus.)

1.   Trial—Jury—Instructions—Whether Witness Accomplice and Sufficiently Corroborated. Whether or not a witness was an

accomplice, and if an accomplice whether his testimony was sufficiently corroborated were both questions for the jury, under the circumstances in this case, governed by the instructions of the court.

　　(a) The instructions on these features and other issues of law held sufficient.

2.    Larceny—Evidence Sustaining Conviction of Grand Larceny. The evidence, though conflicting, is sufficient to support the verdict.

Appeal from District Court, Logan County; C. C. Smith, Judge.

Edward Burleson and another were convicted of grand larceny, and they appeal. Affirmed.

Freeman E. Miller, for plaintiffs in error.

The Attorney General and J. Roy Orr, Asst. Atty. Gen., for the State.

BESSEY, J. This is an appeal from a judgment of conviction in the district court of Logan county, wherein Edward Burleson and Billie Gaines were found guilty of grand larceny. By the verdict of a jury, rendered June 15, 1922, the punishment of both defendants was fixed at confinement in the penitentiary for a term of two years. For convenience the plaintiffs in error will be referred to as the defendants, as they appeared in the trial court.

All the persons implicated, including all the witnesses, except two officers, were negroes. Elijah Ayers was the proprietor of a general store in Langston, a negro settlement in Logan county. This store was burglarized in the nighttime; the perpetrators carrying away a large amount of silk and some other merchandise, which was soon afterwards recovered from the defendants, or members of their families. James Young and these defendants were charged with this offense. Young was tried first and found guilty, with his punishment assessed at two years in the penitentiary. Young

was then used as a witness by these defendants, to support their claim that Young alone committed the crime, or that Young and one Hardiman committed it. Hardiman, who lived with Young, claimed that he was present in the pool hall of defendant Gaines in Cushing a few days prior to the burglary, and that he heard Young and defendants Gaines and Burleson plan the robbery.

The chief claim of the defendants is that the evidence is insufficient; that there was not sufficient corroboration of the witness Hardiman, said to be an accomplice; and that the instructions to the jury were insufficient. In order that these claims, may be understood, it becomes necessary to relate the facts at some length.

It appears from the testimony of the witnesses on both sides that these defendants—Gaines, a keeper of a pool hall in Cushing, and Burleson, a keeper of a negro restaurant—drove to Langston from Cushing and went to the home of Young, arriving there at about 1:30 a. m., as they claim, in search of corn whisky. There they awakened Young, and the three then drove out into the country to get the whisky. Along the road they picked up one Gaston Van Ross, and they all proceeded to a place where a man offered to furnish the whisky, but had no jugs or jars. Burleson, Young, and Van Ross went back to get a jug, but Young did not return with the others when they came back with the jug. After getting the whisky the defendants again drove back into Langston, where Young joined them at about 4 o'clock a. m., as they were about to start on their return drive to Cushing.

Gaines claims that when Young joined them he had a package (containing bolts of silk) under his arm, which he placed on the floor of the car and later delivered to Gaines' wife in Cushing for safe-keeping. Burleson claims that he

did not see the package placed in the car, and did not know what Young did with it after arriving at Cushing. Gaines says he did not notice what Young did with this package after it was placed in the car, and that he knew nothing about its contents. Young says that he carried the package into Billie Gaines' house, where they all were drinking, and that he doesn't remember telling Mrs. Gaines to take care of it, but may have done so. Very soon after this Mrs. Gaines had some of this silk made into garments, and the garments and remnants left were seized by the officers, and the silks identified by the owner of the store and by the storekeeper's wife.

The testimony of Young would indicate that he alone burglarized the store, and that he transported the goods to Cushing to conceal them from the officers. Young claims, and both these defendants claim, that Gaines and Burleson had nothing to do with the taking. The testimony of the defendants indicates that Sessmus Hardiman may have also been an accomplice. Hardiman's testimony is about the only direct testimony implicating the defendants Gaines and Burleson, except their admitted connection with a portion of the stolen goods, the fact that the silks were so soon made into garments by their women folks, and the fact that they were all prowling about the town of Langston from 1 to 4 o'clock a. m. the night of the burglary, and all returned to Cushing together in a more or less drunken condition.

Whether or not Hardiman was an accomplice was a question for the jury. The only testimony tending to indicate that he was an accomplice was the testimony of the defendants themselves, and their testimony along this line, if true, would not necessarily implicate Hardiman in the commission of the crime; it was more in the nature of impeaching Hardiman's story.

It is fair to assume that the jury found, as they had under the evidence a right to find, that Hardiman was not an accomplice. That being the case, his testimony was entitled to such credence as the jury might see fit to give it, without any corroboration. However, the jury probably concluded that the story told by Hardiman was corroborated by the proven facts; that they were all there in and about Langston together for several hours; that parts of the stolen property were conveyed to Cushing in defendant's automobile, along with Young, a confessed thief; and that the stolen silks were so soon manufactured into garments found in the homes of these defendants in possession of their women folks.

We confess that from the mass of conflicting evidence, with several witnesses seeking to exonerate the defendants, it is difficult to determine just who, besides Young, participated in the burglary. The jury were better able than we, and it was their duty, and not the duty of this court, to weigh the evidence and pass upon the credibility of the witnesses.

The question of whether or not Hardiman was an accomplice, and, if an accomplice, whether his testimony was sufficiently corroborated, was also for the jury, under the instructions of the court, which upon that point correctly and sufficiently stated the law as applied to the facts in evidence. No exceptions were taken to any of the instructions given.

The judgment of the trial court is affirmed.

MATSON, P. J., and DOYLE, J., concur.